626 S.E.2d 52

Gerri B. McDILL, individually and as Guardian ad Litem for Garrett B. McDill, Appellant,

v.

MARK'S AUTO SALES, INC., J. Mark Lawhon, DMD, James Marion Lawhon, Jr., and Christopher M. Lawhon, a minor over the age of fourteen, Respondents.

No. 4068.

Court of Appeals of South Carolina.

Heard Dec. 6, 2005.

Decided Jan. 9, 2006.

Rehearing Denied Feb. 16, 2006.

William P. Hatfield and Robert D. McKissick, both of Florence, for Appellant.

Charles E. Carpenter, Carmen V. Ganjehsani, G.D. Morgan, Jr., Albert R. Pierce, Jr., Karl S. Brehmer, and J. Austin Hood, all of Columbia, for Respondents.

GOOLSBY, J.:

Gerri B. McDill filed this action on behalf of herself and her minor son, Garrett,[1] alleging Garrett suffered severe injuries in an automobile collision caused by Christopher Lawhon, a minor over the age of fourteen. In her lawsuit McDill asserted claims against Christopher as well as his father, Dr. Mark Lawhon; his grandfather, James M. Lawhon; and the grandfather's business, Mark's Auto Sales, Inc. McDill appeals from a jury verdict in favor of the defendants, arguing the trial court abused its discretion in failing to qualify a trooper as an expert in accident reconstruction and to allow his opinion testimony regarding the cause of the accident. We affirm.

## FACTS

Shortly after 6:00 p.m. on July 23, 2001, Garrett McDill, then 15, was seriously injured while driving a 1992 Honda Accord that collided with a 1997 Camaro driven by Christopher Lawhon, also 15. The accident occurred as the two cars traveled in the same direction in adjacent lanes of West Palmetto Street, a four-lane road in Florence.

Just before the accident, Christopher had recognized Garrett and made a U-turn and then accelerated to catch up with him. Garrett likewise recognized Christopher and several passengers in his car. As they traveled next to each other on the four-lane road, Garrett was on the left and Christopher was on the right. It had been raining most of the day and water had collected in the right-hand lane. According to Garrett and one of his passengers, Christopher hit a puddle and then struck Garrett's car, causing it to slide sideways and then wrap around a utility pole. In contrast, Christopher denied causing the accident, asserting Garrett was the one who apparently hit a puddle and then struck *his* vehicle.

Gerri McDill brought this action on behalf of herself and Garrett against Christopher, his father, his grandfather, and his grandfather's car dealership, Mark's Auto Sales, Inc., which held title to the Camaro Christopher was driving at the time of the accident. A jury returned a verdict in favor of the

---

1. Garrett's name also appears spelled as "Garret" in the Record on Appeal.

defendants.[2]  The trial court thereafter denied McDill's motion for a new trial.

## LAW/ANALYSIS

■ On appeal, McDill argues the trial court committed reversible error in failing to qualify Trooper Bernard Williams of the South Carolina Highway Patrol as an expert in accident reconstruction and in excluding his opinion testimony that Christopher caused the automobile accident.  We disagree.

At the start of the trial, McDill asked that Trooper Williams's opinion regarding the cause of the accident be admitted as expert testimony.  The testimony was from Trooper Williams's deposition—he was not present at trial. The defendants objected, arguing Trooper Williams was never listed as an expert witness in the area of accident reconstruction and he had never been qualified as such; therefore, although factual testimony as to his investigation was allowable, any testimony specifically regarding his opinion as to causation should be excluded.

In his deposition, Trooper Williams testified that he was called to the scene of the accident and while there he spoke to Christopher, whom he identified as the driver of one of the vehicles in the accident.  Trooper Williams stated Christopher told him that he had hit a puddle of water on the roadway and that it caused him to hydroplane and slide into the left lane where Garrett was traveling.  Trooper Williams additionally stated that after his visit to the scene, based on his experience, it was his opinion that Christopher most probably caused the accident by striking a puddle and then hydroplaning into the left lane where Garrett was traveling.

After reviewing the deposition testimony, the trial court sustained the defendants' objection, ruling McDill had not established a sufficient basis to qualify Trooper Williams as an expert and to permit him to give an opinion.  The court stated, however, that Trooper Williams's testimony regarding adverse statements allegedly made to him by Christopher at

---

**2.** The jury answered "No" to the following question, at which point it ceased further deliberation as per the instructions on the verdict form: "Do you find that the Defendant Christopher Lawhon was negligent and that such negligence proximately caused the Plaintiffs' injuries?"

the scene, i.e., that he was traveling in the right lane, hit water, and then hydroplaned, striking the rear of Garrett's vehicle, would be admissible as fact evidence for which it was not necessary that Trooper Williams be qualified as an expert or give expert opinion testimony. During the trial, portions of Trooper Williams's recorded deposition were subsequently played for the jury. Christopher denied at trial ever having made the alleged statements to Trooper Williams.

After the jury returned a verdict for the defendants, McDill filed a motion for a new trial alleging, among other things, that the trial court erred in excluding the opinion testimony of Trooper Williams as to the cause of the automobile accident. The trial court denied McDill's motion, finding it had properly excluded any opinion testimony from Trooper Williams because "neither Trooper Williams'[s] training nor testimony supported a ruling that he qualified as an expert in accident reconstruction" and "[b]y Trooper Williams'[s] own admission, he was not qualified to testify regarding accident reconstruction."

"To qualify as an expert, a person must have acquired by study or practical experience a special knowledge of a subject matter about which the jury's good judgment and average knowledge is inadequate." *Manning v. City of Columbia,* 297 S.C. 451, 453–54, 377 S.E.2d 335, 337 (1989).

The qualification of an expert witness and the admissibility of his or her opinion are matters resting within the sound discretion of the trial judge. *Id.* at 453, 377 S.E.2d at 336–37. On appeal, we will not disturb the trial judge's ruling absent an abuse of that discretion and a showing of prejudice. *Strange v. South Carolina Dep't of Highways & Pub. Transp.,* 307 S.C. 161, 163, 414 S.E.2d 138, 139 (1992).

"An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Fields v. Reg'l Med. Ctr. Orangeburg,* 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005). "A trial court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion when the ruling is manifestly arbitrary, unreasonable, or unfair." *Id.*

To the extent McDill contends the trial court abused its discretion in failing to qualify Trooper Williams as an expert in accident reconstruction, we find no error in this regard. Aside from the fact that Trooper Williams was, admittedly, never listed as an expert witness by McDill,[3] there is evidence to support the trial court's concerns as to his qualifications as an expert in accident reconstruction. It was undisputed that Trooper Williams had experience in investigating accidents as a highway patrolman and that he did take a six-week accident reconstruction course in 1995 or 1996, as well as a few updating courses, but he was not a member of the Highway Patrol's official accident reconstruction team. We note that when Trooper Williams was asked how he determined the approximate speeds of the two drivers in this accident, he stated he based it on what the drivers told him, as he did not have any evidence to the contrary. Thus, he did not use any particular reconstructive techniques in making this determination. He also apparently was allowed to give his opinion in a federal court proceeding, but that was because none of the attorneys objected to his testimony. Thus, the court was not specifically asked to make a determination regarding his qualifications.[4]

Just as a trial court has broad discretion in qualifying a witness as an expert, which this court may not overturn on appeal, a trial court also has broad discretion in deciding not to qualify a witness as an expert. As noted by Lawhon in his brief, if investigating an accident qualified an officer as an expert in accident causation, then every highway patrolman would qualify as an expert. At most, the testimony presented by McDill established that Trooper Williams had investigated automobile accidents and possibly gave an opinion in a federal

3. *See Strange,* 307 S.C. at 164, 414 S.E.2d at 139 (holding the trial court abused its discretion in qualifying the plaintiffs' expert as an expert in accident reconstruction where the plaintiffs had not identified their expert witness as being an expert in this field in addition to the fields of traffic engineering and geometric design prior to trial).

4. During his deposition, McDill's attorney asked Trooper Williams whether he had previously been qualified in court as an expert in the area of accident reconstruction. One of the defense attorneys objected on the basis of relevance. Trooper Williams was somewhat unsure in his answer, stating, "Yes. I'm not sure about the reconstruction part, but as far as the accident investigation, yes...."

court proceeding regarding accident investigation. Upon reviewing the record, we hold McDill has not clearly demonstrated the trial court abused its discretion in failing to qualify Trooper Williams as an expert in accident reconstruction.

In any event, even assuming it was error to fail to qualify Trooper Williams as an expert, McDill has not established prejudice warranting reversal. *See Owners Ins. Co. v. Clayton,* 364 S.C. 555, 563, 614 S.E.2d 611, 615 (2005) ("Error without prejudice does not warrant reversal."); *Fields,* 363 S.C. at 26, 609 S.E.2d at 509 ("To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof.").

As noted above, Trooper Williams was listed as a fact witness and the trial court allowed portions of his deposition testimony, with his opinion redacted, to be presented to the jury. The jury was given Trooper Williams's testimony that Christopher allegedly told him at the scene of the accident that he had hit a puddle, hydroplaned, and then moved over into the left lane, striking Garrett's vehicle. This information is basically the same as the trooper's opinion that Christopher had hit a puddle and then hydroplaned into Garrett's vehicle. It was up to the jury, as the finder of fact, to judge the credibility of the witnesses and to resolve any conflicts in their testimony. *See, e.g., Curcio v. Caterpillar, Inc.,* 355 S.C. 316, 320, 585 S.E.2d 272, 274 (2003) (holding it is up to a jury to decide credibility issues and to resolve any conflicts in the testimony or the evidence); *Getsinger v. Midlands Orthopaedic Profit Sharing Plan,* 327 S.C. 424, 428, 489 S.E.2d 223, 225 (Ct.App.1997) (stating conflicts in the testimony are for the jury to resolve as the finder of fact) (citing *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992)).

**AFFIRMED.**

SHORT, J., and CURETON, A.J., concur.